UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CRAIG OLIVER,

    Plaintiff,

    v.

CAPTAIN VENABLE, *et al.*,

    Defendants.

Civil Action No. JRR-24-2614

**MEMORANDUM OPINION**

*Pro se* Plaintiff Craig Oliver, presently incarcerated at North Branch Correctional Institution ("NBCI"), filed the instant Complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. Oliver names as Defendants Captain Melissa Venable, Lieutenant Eric Walker, Correctional Officer Kingsley Chime, Correctional Officer Justice Marboah, and Correctional Officer Godwin Uche.[1] This matter comes before the court on Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 24; the "Motion").[2] Despite Oliver being notified of his opportunity to respond to the Motion (ECF No. 26), he has failed to do so. The court has reviewed the papers; no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth herein, by separate accompanying order, the Motion is granted and the Complaint dismissed without prejudice for failure to exhaust administrative remedies.

**I.    BACKGROUND**

Oliver alleges that despite his documented kidney disease, Defendants denied him medical treatment for 15 days until he fainted and was found unconscious in his cell. ECF No. 1 at 2.

---

[1] The Clerk shall amend the docket to reflect the full and complete spellings of Defendants' names.
[2] Defendants also move to seal Exhibit C, which includes Oliver's personal medical information. ECF No. 25. That motion, unopposed, is granted.

Specifically, Oliver alleges that on May 25, 2024, Officer Chime observed him sprawled on the floor of his cell in pain. ECF No. 1 at 3. Oliver asked Chime to call medical; Chime assured Oliver he would do so. *Id*. Later that day, Oliver asked Chime if he had called medical; in response, Chime asked whether the sergeant (presumably, medical) had checked on Oliver. Oliver answered no and Chime responded that he would have the sergeant come to his cell. *Id*. Oliver requested Chime call medical on his behalf several more times that night but was ignored. *Id.*

That same night, Oliver advised Sgt. Marboah that he was in pain from kidney disease and needed medical attention: despite Marboah advising Oliver to "stand by," Marboah did not return to Oliver's cell. *Id*. The following day, Oliver advised Defendant Walker that he had surgery on May 20th and despite repeated requests for medical attention, he had not been seen. ECF No. 1 at 3. Walker assured Oliver he would be taken to medical, but he was not. *Id*.

On May 28, 2024, Oliver's body "shut down" and he released his bowels. ECF No. 1 at 3-4. Earlier that day, Oliver had advised Uche that he needed medical attention and Uche observed Oliver lying on the floor of his cell covered in vomit and feces, and inquired whether he was okay. *Id*. at 4. Oliver's cellmate told Uche that Oliver needed medical attention, but Uche left, and no medical personnel came to the cell. *Id*. Also on May 28, 2024, Oliver's fiancée called the institution and spoke with Defendant Venable, advising her of Oliver's need for medical treatment. ECF No. 1 at 4. Venable advised that she would ensure Oliver was seen by medical staff, but he was not. *Id*.

On June 4, 2024, Oliver asked Officer Fondong to call medical: Fondong replied that he would. ECF No. 1 at 4. Later that day, Oliver passed out and awoke with a gash over his eye and knot on his head. *Id*. He was taken to medical via wheelchair where he received treatment. *Id*.

2

Oliver alleges that had he been taken to medical when he asked, he would have received proper medication and avoided the days of suffering. ECF No. 1 at 4. He seeks compensatory damages. *Id*. at 6.

Through the Motion, Defendants argue they are entitled to dismissal of the Complaint or, alternatively, summary judgment because: (1) Defendants are immune from suit in their official capacities; (2) Oliver failed to exhaust his administrative remedies; (3) Oliver fails to state a claim for which relief may be granted for failure to provide medical care; (4) Oliver has failed to allege sufficient personal participation by Defendants Chime, Marboah, Uche, Venable and Walker; and (5) Defendants are entitled to qualified immunity.

## II. LEGAL STANDARDS

**Federal Rule 12(b)(6)**

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

**Federal Rule 56**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249. Courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there

is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Id.* (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)). "In other words, a factual dispute is genuine only where 'the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find' in its favor." *Id.* (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 175 (4th Cir. 1988)).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).

While self-represented pleadings are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt,* 999 F.2d at 778-79, and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Exhibits to the Motion & Conversion of the Motion to One for Summary Judgment**

Defendants attach exhibits in support of their Motion. When deciding a motion to dismiss under Rule 12(b)(6), a court typically considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule

12(d) requires the court to treat the Motion as a motion for summary judgment where matters outside the pleadings are not excluded and, instead, are considered by the court in resolution of the Motion. Fed. R. Civ. P. 12(d). However, a court may consider documents attached to a motion to dismiss without converting it to a motion for summary judgment if the attached exhibits are integral to the complaint and their authenticity is not challenged. *Sec. of State for Defence v. Trimble Nav, Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007).

Importantly, "[t]here are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Second, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Interest Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

The present case meets both requirements. First, Oliver had adequate notice that the Motion may be treated as a motion for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (explaining that "[b]ased upon the caption alone, [the plaintiff] was on notice that this motion might be treated as one for summary judgment"). Second, Oliver does not argue that additional discovery is necessary, and did not submit a Rule 56(d) affidavit. *See Harrods*, 302 F.3d at 244 (explaining that "[i]f a party believes that more

discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery.'") (quoting *Evans*, 80 F.3d at 961); *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (explaining that the failure to file an affidavit indicating a need for discovery "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.").

For the reasons discussed more fully below, the exhibits to the Motion bear directly on Oliver's legal entitlement to pursue recovery in this court on the grounds asserted in the Complaint. Therefore, the court finds the documents attached to the Motion integral to the Complaint; further, their authenticity is not challenged. Accordingly, the court evaluates the motion under Rule 12(b)(6) and not Rule 56.

### III. DISCUSSION AND ANALYSIS

As it pertains to exhaustion of Oliver's administrative remedies, Defendants submit the Declaration of F. Todd Taylor, Jr., Director of the Incarcerated Individual Grievance Office ("IIGO") (ECF No. 23-3 at 1) with supporting exhibits.

Mr. Taylor's declaration avers that Oliver filed a grievance with the IIGO regarding the allegations raised in his Complaint. ECF No. 23-3 ¶ 6. The matter was referred for a hearing before the Office of Administrative Hearings ("OAH"), which (at the time Defendants filed the Motion) was scheduled for September 3, 2025. *Id*. ¶ 7. Based on the forgoing, Defendants argue that Oliver's "administrative remedies will not be exhausted until his grievance is either dismissed by the OAH or the OAH renders a decision that is affirmed, reversed or modified by the Secretary of [the Department of Public Safety and Correctional Services]" and the Compliant must be dismissed without prejudice because "Plaintiff has not properly exhausted his administrative remedies prior

to filing this suit." ECF No. 23-1 at 7.³  As noted, Oliver has failed to respond to the Motion; and therefore, concedes the arguments set forth therein.

**Prisoner Litigation Reform Act and Exhaustion of Administrative Remedies**

The Prisoner Litigation Reform Act ("PLRA") provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Under the PLRA, "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id*. § 1997e(h).  The term "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).  The court may dispose of a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is

---

³ For the reasons stated *infra*, the court agrees with Defendants that Oliver's claims are unexhausted.  Therefore, the court will not consider other evidence or arguments advanced by Defendants in support of the Motion

"apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F. 3d at 729; *see also Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Although the PLRA requires a prisoner to exhaust available remedies, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has established an "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* MD. CODE ANN., CORR. SERVS. ("C.S."), § 10-201, *et seq.*; MD. CODE REGS. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of a "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the administrative remedy procedure define "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not

9

consider an individual's grievance that is within the jurisdiction of the [IIGO] or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2.  C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IIGO against any Department of Corrections official or employee. *Id.* § 10-206(a). If, however, a prison has an IIGO-approved grievance procedure, the prisoner must first follow the institutional ARP process before filing a grievance with the IIGO. *Id.* § 10-206(b). When the ARP process makes available potential remedy, it must be followed and completed before an inmate may file a grievance with the IIGO.

The ARP process consists of multiple steps. A prisoner is first required to file an initial ARP with the facility's "managing official." COMAR 12.02.28.05(D)(1). "Managing official" is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." An ARP request must be filed within 30 days following the complained-of incident, or within 30 days of the date on which the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process becomes relevant (and required) if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. Should either of those circumstances exist, the prisoner has 30 days within which to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5). If the Commissioner denies an appeal, the prisoner has 30 days to file a grievance with the IIGO. COMAR 12.02.28.18; COMAR 12.07.01.05(B); C.S. § 10-206(a).

When filing with the IIGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IIGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IIGO, the hearing is conducted by an administrative law judge ("ALJ") of the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); MD. CODE ANN., STATE GOV'T § 10-206(a)(1).

An ALJ decision denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). If the ALJ concludes, however, that the inmate's complaint is meritorious, in whole or in part, the ALJ's decision constitutes a recommendation to the Secretary of DPSCS; the Secretary is then tasked with rendering a final agency determination within 15 days following receipt of the ALJ's proposed decision. C.S. § 10-209(b)(2)(c); COMAR 12.07.01.10(B). The final agency determination is subject to judicial review in Maryland state court so long as the claimant has exhausted his remedies. C.S. § 10-210. An inmate need not, however, seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g.*, *Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes, including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing

11

litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (explaining that exhaustion provides prison officials with the opportunity to respond to a complaint through appropriate administrative remedies). The PLRA's exhaustion requirement obligates prisoners to pursue the administrative grievance avenue until they receive a final denial of the claims, having pursued the administrative appellate process to its end. *Chase v. Peay*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the administrative grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (holding that prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court explained: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court … The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." This court has consistently recognized this principle. *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 624-25 (D. Md. 2015); *Miller v.*

*McConneha, et al*, JKB-15-1349, 2015 WL 6727547 at *3-4 (D. Md. November 11, 2015); *Wilson v. MCTC Administration*, PWG-21-3094, 2022 WL 14849012 at *6 (D. Md. October 26, 2022); *Leupolu v. Okoluku*, SAG-21-1854, 2022 WL 4017308 at *4 (D. Md. September 1, 2022); *Hand v. Allen*, JKB-20-3119, 2022 WL 137978 at *4 (D. Md. January 14, 2022); *Wooten v. Hogan, et al.*, CCB-20-1218, 2021 WL 416947 at *3 (D. Md. September 14, 2021); *Ervin v. Corizon Health, et al.*, ELH-19-1666, 2020 WL 2490042 at *28 (D. Md. May 13, 2020); *Conway v. Carr*, RDB-19-809, 2019 WL 4806141 at *5 (D. Md. October 1, 2019); *Shiheed v. Webb, et al.*, GLR-16-3166, 2019 WL 3220122 at *5 (D. Md. July 16, 2019).

The court received Oliver's Complaint for filing on September 9, 2024. ECF No. 1. At that time, his administrative grievance remained pending. Therefore, Oliver may not pursue the instant judicial remedy at this time.

**IV.   CONCLUSION**

For the foregoing reasons, the Motion will be granted and the Complaint dismissed without prejudice for failure to exhaust administrative remedies. A separate order follows.

January 7, 2026

/S/
_____
Julie R. Rubin
United States District Judge

13